### J. J. LE TOURNEAU v. CITY OF DULUTH and Others.[1]

January 13, 1902.

Nos. 12,902—(218).

**Injunction—Issue of Municipal Bonds—Popular Vote.**

> Action by a taxpayer to restrain a proposed bond issue by the city of Duluth. *Held*, construing so much of Laws 1899, c. 351, § 10, as provides that "no city council * * * shall issue bonds for any purpose to the amount of one hundred thousand dollars (100,000) or over, until the proposition to issue said bonds has been approved by a majority of the legal voters,". that the city council may issue the bonds of the city to any amount less than one hundred thousand dollars for any particular authorized public purpose without the approval of such voters, although the then aggregate bonded indebtedness of the city for all purposes equals or exceeds the amount named.

Appeal by plaintiff from an order of the district court for St. Louis county, Cant, J., sustaining a demurrer to the complaint. Affirmed.

*S. T. & Wm. Harrison,* for appellant.

*Oscar Mitchell,* for respondents.

START, C. J.

Action by a taxpayer to restrain a proposed issue of bonds to the amount of $60,000 by the common council of the city of Duluth for the purpose of extending its water plant without first submitting the proposition to issue such bonds to the voters of the city. The defendant interposed a general demurrer to the complaint, and the trial court made its order sustaining the demurrer, from which the plaintiff appealed.

[1] Reported in 88 N. W. 529.

It appears from the allegations of the complaint that the city of Duluth adopted, pursuant to Laws 1899, c. 351, a special charter, which has been in effect since March, 1900; and, further, that the city, by its common council, in January, 1901, issued without submitting the question of their issue to the voters of the city, and sold, permanent improvement revolving fund bonds to the amount of $99,000, which are now outstanding. The contention of the plaintiff is to the effect that, the council having already issued bonds to the amount of $99,000 without a vote of the electors, it cannot now issue the water bonds here in question until it is authorized to do so by a majority vote of the electors of the city. If this claim be correct, it follows that the proposed issue of bonds is illegal, and that the complaint states a cause of action.

Whether the proposed issue of bonds is legal or not depends upon the construction to be given to Laws 1899, c. 351, § 10, hereafter referred to as the "enabling act," and to Duluth Charter, § 286, the here material provisions of which are substantially these: The city council shall control the property and finances of the city, and shall have power to borrow money on its credit for city purposes, and to issue bonds therefor; but

"No city council of any city in this state shall issue bonds for any purpose, to the amount of one hundred thousand dollars (100,000), or over, until the proposition to issue said bonds has been approved by a majority of the legal voters of that city, voting at a general or special election." Section 10.

The city of Duluth may issue bonds by ordinances as follows: (1) To pay floating indebtedness of the city existing at the time this charter goes into effect; (2) for the purpose of constructing, regulating, maintaining, extending, or improving suitable water or light plants; (3) such additional bonds as may be necessary to extend, enlarge, or improve such water and light plants.

"No bonds excepting bonds for refunding indebtedness shall be issued for any purpose to an amount exceeding $100,000 until the proposition to issue said bonds has been approved by a majority of the legal voters of the city, voting at a general or special election. Whenever the common council passes any ordinance to issue bonds in pursuance of the provisions of this section, such ordinance shall provide for the submission to the legal voters of the city, at

some general city election or at some special election to be called by the common council for that purpose, the proposition of issuing said bonds, to an amount deemed by said common council advisable." Section 286.

Whether the exception of bonds for refunding indebtedness contained in the charter provisions quoted is repugnant to the prohibition contained in the enabling act, and therefore void, is not here material, for the subject under consideration is not refunding bonds, but water bonds. It is clear from the charter provisions that no bonds to an amount exceeding $100,000 can be issued by the council until the proposition to issue such bonds has been approved by a majority of the legal voters of the city; and, further, that any proposed issue of bonds not falling within this prohibition may be issued without the approval of such voters. It is true that the general language which follows this prohibition, if construed without reference to the connection in which it is used, would require all proposed bond issues, without reference to the amount thereof, to be submitted to the voters of the city. But it cannot be so construed, for it would render the preceding sentence containing the prohibition meaningless and useless. When all of these charter provisions are construed together, as they must be, it is apparent that the construction we have adopted is not only the only reasonable one that can be given to the prohibition of the charter, but the only one which will give effect to all the charter provisions in question. The charter, therefore, imposes no greater restrictions as to issuing bonds without submitting the question to the voters than the enabling act does.

This narrows the question of the legality of the proposed bond issue to the sole question: What is the proper interpretation of the prohibition contained in the enabling act, "no city council * * * shall issue bonds for any purpose to the amount of one hundred thousand dollars (100,000), or over, until the proposition to issue said bonds has been approved by a majority of the legal voters"?

It is urged on behalf of the plaintiff that the words, "for any purpose," as used in this prohibition, mean "for all purposes," and that the prohibition, read according to its true meaning, forbids, without the approval of a majority of the legal voters, the issue

by any city of any bonds when the aggregate amount of bonds already issued for all purposes equals or exceeds $100,000. If such is the meaning of the prohibition, the legislature successfully concealed it by the words used to express it. If such was their intention, the simple and natural way of expressing it would have been in these words: "No city council of any city shall issue any bonds for any purpose when the aggregate bonded indebtedness of the city for all purposes equals or exceeds one hundred thousand dollars, until the proposition to issue such bonds has been approved by a majority of the legal voters of the city voting at a general or special election." But, if the intention of the prohibition was to forbid the issue of bonds in excess of the limitation named for any of the several specific purposes for which cities are authorized by law to issue bonds, the language used fairly expresses such intention. It is the proposition to issue bonds to the amount of $100,000 or over for any purpose which must be approved by the voters, and not a proposition to issue a less amount in case the then aggregate bonded indebtedness equals or exceeds the limitation. The language used is, "until the proposition to issue said bonds has been approved." What bonds? "Bonds to the amount of one hundred thousand dollars or over." No other bonds are mentioned in the prohibition, which is directed against large issues of bonds for any specific purpose, unless the proposition is first approved by the voters.

While the prohibition is not as aptly expressed as it might have been, it is reasonably clear that its purpose was to prevent any city from entering upon the work of constructing, extending, or repairing of any particular public improvement, or upon any other authorized municipal enterprise involving the necessity of a bond issue of $100,000 or more unless the proposition to issue the bonds for such purpose should be first approved by the voters of the city; or, in other words, this prohibition only forbids a bond issue for any specific purpose exceeding the amount limited without the approval of the legal voters of the city. We accordingly hold that the common council of the city may issue its bonds to any amount less than $100,000, for any particular authorized public purpose, without the approval of the electors, although the then aggregate

bonded indebtedness of the city for all purposes equals or exceeds the amount named, but not the maximum limitation in excess of which no bonds can be issued for any purpose whatever.

It is suggested that this construction would enable a city to enter upon any municipal enterprise it pleased without the approval of the voters, although it involved an ultimate bond issue of a million of dollars, more or less, by resorting to separate bond issues for instalments of the entire work. Such an act would be a palpable evasion of the law,—a mere subterfuge,—to be dealt with by the court accordingly. But, were it otherwise, the suggestion affords no reason why we should not construe the enabling act as it reads, leaving the legislature to amend it if time and experience shall demonstrate the necessity for so doing.

Again, it is suggested that, unless the prohibition be so construed as to forbid any bond issue whatever without the approval of the voters whenever the aggregate amount of bonds already issued equals or exceeds $100,000, the door will be open for municipal extravagance in all cities that have adopted charters pursuant to this enabling act. If this be so, the remedy is by an appeal to the legislature, or by an appeal at the polls, and the election of members of the city council who will manage municipal affairs with the same fidelity and prudence as conservative and successful men manage their own business. But the construction contended for by the plaintiff, even if it were permissible, would lead to practical difficulties. Thus, if a city has once issued bonds for all purposes to the aggregate amount of $100,000, it cannot thereafter issue bonds for any purpose, nor in any amount, without submitting the proposition to the voters, even though the amount of the proposed issue was less than the expenses of holding an election. The proposed bond issue in this case is for a specific authorized public purpose, and the amount of bonds necessary to be issued for its execution is less than $100,000. Therefore the city council is authorized to issue the bonds without submitting the proposition to the voters of the city.

Order affirmed.

LEWIS, J. (concurring).

I concur in the views expressed by the CHIEF JUSTICE. The legislature has declared what it deems to be for the interests of the people, and we, in our interpretation, should be guided, not by what the voters on the adoption of the charter may have thought, nor by assuming that every man who holds a municipal office is a rascal, but by a consideration of all of the provisions of the act and charter in accordance with the usual canons of construction. The case turns largely upon the fact that the enabling act specifies certain purposes for which bonds may be issued within a certain limitation fixed by a percentage of value.

In the city charter is contained an enactment which enumerates the purposes defined by the enabling act, and which prescribes the method of procedure. The words "for any purpose," as used in the enabling act, relate back to the several purposes before specified. If no limitation had been fixed, and no particular purposes had been stated, the illustration used in the dissenting opinion would be applicable. The proposition would then be similar to the case of an individual who should direct that disbursements for charity on his account by his cashier should not, for any purpose, exceed ten dollars a month. No one could reasonably claim, in such a case, that the limitation did not extend to all purposes. But, if a man authorizes disbursements to be made by his agent for several specific and independent charitable purposes, not exceeding in the aggregate a certain percentage of his monthly income, provided that no more than ten dollars a month shall be disbursed for any purpose until the proposition to make such disbursement has been approved by him, could it be reasonably claimed that the agent's authority was limited to the expenditure of ten dollars in the aggregate for all the specific authorized purposes? This illustration is strictly analogous to the provisions of the enabling act and city charter under consideration.

COLLINS, J. (dissenting).

I dissent, and am authorized to say that Justice BROWN concurs in my views.

The charter of the city of Duluth, adopted in February, 1900, is based upon the enabling act (Laws 1899, c. 351), by which cities are

authorized to frame their own charters. In that instrument (section 286), under the heading, "Power of the City to Borrow or Increase Debt," are provisions authorizing the issuance of bonds by ordinance for several different purposes; among others, for such additional bonds as may be necessary to extend, enlarge, or improve the existing water or light plants, or either. It also contains the following general provisions, the italics being my own:

"No bonds excepting bonds for refunding indebtedness shall be issued *for any purpose*, to an amount exceeding $100,000 until the proposition to issue said bonds has been approved by a majority of the legal voters of the city voting at a general or special election. Whenever the common council passes any ordinance to issue bonds in pursuance of the provisions of this section, such ordinance shall provide for the submission to the legal voters of the city at some general city election or at some special election to be called by the common council for that purpose, the proposition of issuing said bonds to an amount deemed by said common council advisable."

An examination of this section will show clearly that all bonds, without regard to the amount thereof, must be issued under ordinances, and under its express terms, before quoted, the propositions contained in such ordinances must be submitted to the legal voters under certain circumstances. The enabling act itself (section 10) provides that

"No city council of any city in this state shall issue bonds *for any purpose* to the amount of one hundred thousand (100,000) dollars, or over, until the proposition to issue said bonds has been approved by a majority of the legal voters of that city voting at a general or special election."

The express provisions of the city charter are construed and disposed of by the majority in a way which I do not regard as sustainable, and, instead of coinciding with the assertion in the opinion that, if the legislature had actually intended, when using the language found in section 10, and above italicized, to prohibit the issuance of bonds in an amount exceeding $100,000 without a vote on the proposition, it "successfully concealed" its meaning, I am of the opinion that it very clearly indicated its intention, and in a very plain and unambiguous manner conferred upon the legal

85 M.—15

voters of every city framing its own charter the right to vote on propositions to issue bonds in all cases where the bonds already issued amounted to or exceeded $100,000.

The power of the council was expressly curtailed by the language found in section 10—First, by the words "for any purpose"; and, second, by the requirement that all bonds issued in pursuance of the provisions of that section must be under ordinances, and that whenever the council passed such an ordinance it should provide for a submission of the proposition therein contained to the legal voters of the municipality interested for approval or disapproval. It seems to me that the voters of the city of Duluth, to whom was submitted this charter for approval at the polls, must have understood that, when the bonded indebtedness of the city amounted to $100,000, the council was deprived of power to issue further bonds unless authorized by such voters. If a man directed that his household expenses should not exceed $100 per month *for any purpose*, he would be somewhat surprised when told that his grocery bill was $50, his fuel and light bill $50, and his butcher's bill $50, an aggregate of $150, and also that his direction had not been disregarded because less than $100 had been expended for a single, or for any *one*, purpose. If a man should direct that disbursements for charity to be made by his cashier should not *for any purpose* exceed $10 a month, he would certainly be astonished upon learning that his cashier had expended $10 each month for each of three or four different charitable purposes, and that, if he expected the amount authorized to include *all* purposes, he should have said so. I believe that the court should construe such provisions in the interest of the people, and not so as to confer unlimited power upon the governing body of a city to plunge it in debt at its own sweet will, except as restricted by the percentage clause.

It is suggested in the main opinion that, if the intent had been as I contend, it was very easy for the legislature to have provided in this section that bonds should not be issued without a vote of the people when the *aggregate* bonded indebtedness of the city for *all* purposes equaled or exceeded $100,000. To this I reply that, while such language might better and more precisely express

the intent, it would be simply multiplying words. Let me suggest that, if the intent had been to permit bonds to be issued by piece-meal for different purposes, as the majority hold, it would have been equally as easy for the legislature to have enacted that bonds should not be issued "for any *one* purpose" to an amount in excess of $100,000 without a vote of the people. A single word would have made the meaning perfectly plain to the taxpayers vitally interested. The result of this decision is that, without the vote provided for, bonds may be issued by city councils in instalments of "ninety-nine thousand nine hundred and ninety-nine dollars, from time to time, until the five per cent. limit is reached in cities of over eight thousand inhabitants, and until ten per cent. of the assessed valuation is reached in cities of less than eight thousand inhabitants," provided different objects can be discovered for which such bonds may be issued day by day, and no matter how rapidly.

It is also suggested in the main opinion that the construction contended for by plaintiff, even if permissible, would lead to practical difficulties, because, if a city had already issued bonds for all purposes to the aggregate amount of $100,000, it could not thereafter issue in any amount, for any purpose, without the approval of the voters, although the amount of the proposed issue might be less than the expense of holding an election. If it be desirable to confer authority upon a city council to first ascertain the expense of holding an election upon a proposition to issue bonds, and then, if the amount of the issue is less than that expense, to allow the council to issue bonds without such election, the legislature should be called upon to so enact. I have not supposed that the rights of legal voters when before a legal tribunal to express their views at the polls upon any given proposition was to be determined, or even to be affected, by any consideration of expense.

I am of the opinion that the demurrer should have been sustained.